UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KELSEY MURPHY, on behalf of herself and all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>HEALTH CARE SERVICE CORPORATION d/b/a BLUE CROSS AND BLUE SHIELD OF ILLINOIS,<br><br>Defendant. | Case No. 1:22-cv-02656<br><br>Hon. Steven C. Seeger<br><br>Magistrate Judge Gabriel A. Fuentes |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

Defendant Health Care Service Corporation, a Mutual Legal Reserve Company operating in Illinois as Blue Cross and Blue Shield of Illinois ("BCBSIL"), hereby submits this memorandum of law in support of its Motion to Dismiss Plaintiff's Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion") and states as follows:

### I.  INTRODUCTION

Plaintiff's Complaint asserts one Count against BCBSIL for sex discrimination under Section 1557 of the Affordable Care Act in connection with an alleged denial for infertility benefits. Plaintiff asserts her HMO healthcare benefit plan requires covered individuals in same-sex relationships to first incur out-of-pocket costs to access infertility benefits, but does not place any similar requirement on covered individuals in heterosexual relationships seeking infertility benefits. Notably, however, Plaintiff's Complaint is premised on old benefit plan language that is inapplicable to the time period at issue in Plaintiff's Complaint. As explained in further detail below, the applicable definition of "Infertility" in Plaintiff's benefit plan does not, in fact, require

a covered individual in a same-sex relationship to shoulder any out-of-pocket costs whatsoever prior to being eligible for infertility benefits. Therefore, Plaintiff fails to plead facts plausibly establishing that her benefit plan terms intentionally discriminate against her on the basis of her sexual orientation. Accordingly, Plaintiff's Complaint should be dismissed.

## II.     RELEVANT FACTUAL BACKGROUND

From July 1, 2020 to the present, the time period when Plaintiff sought infertility treatment, Plaintiff has been covered under a group HMO healthcare benefit policy insured by BCBSIL and sponsored by Plaintiff's employer, the Allendale Association (the "Plan"). Compl. ¶ 3. Plaintiff alleges that in the fall of 2020, she sought to undergo in vitro fertilization ("IVF") but was informed by her doctor's office in November 2020 that BCBSIL would not cover IVF services "due to her not meeting the criteria" of the Plan. *Id.*, ¶¶ 34-35. Plaintiff subsequently alleges that in the summer of 2021, she again sought coverage for IVF but was again informed it would not be covered under her Plan, thus Plaintiff paid for IVF treatment out of pocket. *Id.*, ¶ 37. Plaintiff became pregnant through IVF but suffered a miscarriage at 8 weeks. *Id.*, ¶ 38. Following the miscarriage, Plaintiff alleges BCBSIL denied subsequent IVF or other fertility treatment at her chosen fertility clinic. *Id.* Plaintiff further alleges that she contacted BCBSIL in March 2022 to inquire regarding any changes to the Plan and was informed that the benefits in the 2022 Plan were the same as those in her 2021 Plan. *Id.*, ¶ 43.

The definition of Infertility cited in Plaintiff's Complaint and forming the basis of Plaintiff's allegations is inapplicable and irrelevant because it was taken from a pre-July 1, 2020 version of the Plan. *Compare* Compl. Exh. A at p. 29 *with* Declaration of Rob Adams, Exh. A at p. 46; Exh. B at p. 41 ("Adams Decl."), attached hereto as <u>Exhibit 1</u>. In fact, Plaintiff's Plan infertility benefits were revised in 2020 and, as of July 1, 2020 through the present, the accurate and applicable Plan definition of "Infertility" is as follows:

> Infertility means the inability to conceive a child after one year of unprotected sexual intercourse, <u>the inability to conceive after one year of attempts to produce conception, the inability to conceive after an individual is diagnosed with a condition affecting fertility, or the inability to attain or maintain a viable pregnancy or sustain a successful pregnancy</u>. The one year requirement will be waived if your Physician determines that a medical condition exists that renders conception impossible through unprotected sexual intercourse, including but not limited to, congenital absence of the uterus or ovaries, absence of the uterus or ovaries due to surgical removal due to a medical condition, involuntary sterilization due to Chemotherapy or radiation treatments; or, efforts to conceive as a result of one year of medically based and supervised methods of conception, including artificial insemination, have failed and are not likely to lead to a successful pregnancy.

Adams Decl., Exh. A at p. 46; Exh. B at p. 41 (emphasis added).[1] Notably, under the actual applicable Plan terms, there are multiple ways to meet the Plan definition of Infertility to be eligible for infertility benefits such as IVF: (1) the inability to conceive after one year of unprotected sexual intercourse; (2) the inability to conceive after one year of attempts to produce conception; (3) the inability to conceive after an individual is diagnosed with a condition affecting fertility; (4) the inability to attain a viable pregnancy; (5) the inability to maintain a viable pregnancy; or (6) the inability to sustain a successful pregnancy. *Id.* Under the Plan, if a covered individual meets one of these criteria under the definition of Infertility, that individual will be eligible for infertility benefits which include, but are not limited to, "in vitro fertilization, uterine embryo lavage, embryo transfer, artificial insemination, gamete intrafallopian tube transfer, zygote intrafallopian tube transfer, low tubal ovum transfer and intracytoplasmic sperm injection." *Id.*

Plaintiff's Complaint asserts one Count against BCBSIL alleging violation of 42 U.S.C. Section 18116(a) for alleged discrimination on the basis of sex. Compl. ¶¶ 56-63. As explained in further detail below, Plaintiff has not and cannot plead facts to plausibly allege that the

---

[1] The highlighted language in the paragraph above is materially different than the pre-2020 language cited in Paragraph 21 of Plaintiff's Complaint ("the inability to conceive a child after one year of unprotected sexual intercourse or the inability to sustain a successful pregnancy").

applicable Plan definition of Infertility discriminates against individuals in same-sex relationships pursuant to 42 U.S.C. Section 18116(a).

### III.   LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plausibility requirement applies only to the factual allegations of the pleading, not to the legal theories that are asserted or omitted by the pleader. *Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014). Conclusory allegations or legal conclusions are not entitled to the assumption of truth. *Iqbal,* 556 U.S. *at* 678-79 (2009); *N. Tr. Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995).  A court considering a motion to dismiss can disregard these conclusory allegations and judge the complaint only on well-pleaded factual allegations. *Id.*

In addition, a Court may properly consider "documents that are central to the complaint and are referred to in it" when deciding a motion to dismiss. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).  Accordingly, because the Plan language is central to Plaintiff's Complaint, the Court may properly consider the 2020 and 2021 Plans when deciding this Motion without converting it to a summary judgment motion.  *Id.*

### IV.   ARGUMENT

**A.   Plaintiff Fails to State a Claim for Intentional Discrimination on the Basis of Sex**

Plaintiff's Complaint asserts one Count for alleged sex discrimination under Section 1557 of the Affordable Care Act, 42 U.S.C. Section 18116(a).  Section 1557 provides that "[t]he enforcement mechanisms provided for and available under . . . title IX" and the other statutes listed in the statute "shall apply for purposes of violations of this subsection." *Id*. § 18116(a)-(b). Accordingly, this Court's analysis of Plaintiff's Complaint is governed by the framework

applicable to sex discrimination claims brought pursuant to Title IX. *Briscoe v. Health Care Serv. Corp.*, 281 F. Supp. 3d 725, 738 (N.D. Ill. 2017) (applying Title IX pleading standards and dismissing Section 1557 claim asserting sex discrimination for failure to plead intentional discrimination on the basis of sex); *see also Weinreb v. Xerox Bus. Servs., LLC,* 323 F. Supp. 3d 501, 521 (S.D.N.Y. 2018) (same).

Notably, "Title IX only prohibit[s] <u>intentional</u> discrimination." *Jackson v. Nw. Univ. Sch. of Law*, No. 10 C 1986, 2010 WL 5174389, at *3 (N.D. Ill. Dec. 15, 2010) (emphasis added); *see also Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.,* 743 F.3d 569, 583 (7th Cir. 2014) (noting that for purposes of a title IX claim, "[t]he discrimination must … be intentional"); *Briscoe*, 281 F. Supp. 3d at 738 (dismissing disparate impact sex discrimination claim as impermissible under Section 1557). Section 1557 therefore does not provide a private right of action for disparate impact sex discrimination claims. *Briscoe*, 281 F. Supp. 3d at 738.

Under Seventh Circuit law, to state a claim for intentional sex discrimination under Title IX, Plaintiff must allege facts showing that "sex was a motivating factor" in the defendant's allegedly discriminatory actions. *Doe v. Purdue Univ.*, 928 F.3d 652, 667-68 (7th Cir. 2019). Put more directly, Plaintiff must allege sufficient facts that, "if true, raise a plausible inference that [BCBSIL] discriminated against [Plaintiff] on the basis of [Plaintiff's sexual orientation]." *Id.* Where a plaintiff does not plead facts "support[ing] the inference that [sexual orientation] bias was a motivating factor" behind the challenged conduct, the claim must be dismissed. *Ludlow v. Nw. Univ.*, 125 F. Supp. 3d 783, 792 (N.D. Ill. 2015).

Here, Plaintiff cannot establish that the Plan language intentionally discriminates against individuals in same-sex relationships or that "sex was a motivating factor" in the denial of Plaintiff's claim for IVF benefits. Indeed, as set forth above, the applicable Plan definition of

Infertility contains criteria under which a covered individual, including an individual in a same-sex relationship, can meet that definition without incurring out-of-pocket costs or other preliminary requirements that would not apply to a covered individual in a heterosexual relationship. Specifically, under the plain language of Plaintiff's Plan, a covered individual in a same-sex relationship – like Plaintiff – would be considered to have an "inability to attain a viable pregnancy" and therefore would meet the definition of Infertility and qualify for infertility benefits by virtue of being in a same-sex relationship. Adams Decl., Exh. A at p. 46; Exh. B at p. 41. Thus, Plaintiff cannot plead facts to support a plausible inference that her Plan intentionally discriminates against individuals in same-sex relationships on the basis of sexual orientation and her Complaint should be dismissed.[2] *Weinreb*, 323 F. Supp. 3d at 521; *Briscoe*, 281 F. Supp. 3d at 738; *Ludlow*, 125 F. Supp. 3d at 792.

Plaintiff's Complaint also fails because her conclusion that her Plan discriminates against individuals in same-sex relationships is premised entirely on the incorrect conclusion that "there are only three ways to meet BCBSIL's definition of infertility: (1) a year of 'unprotected sexual intercourse'; (2) a diagnosis of a medical condition rendering conception impossible through unprotected sexual intercourse; or (3) pay out of pocket for a year of 'medically based and supervised methods of conception.'" Compl. ¶ 23. As explained above, this conclusion is unsupported by the Plan because there are several other criteria by which a covered individual may meet the definition of Infertility, that would not require either a year of unprotected sexual intercourse, diagnosis of a medical condition, or out of pocket payments for a year of fertility treatments, including the "inability to attain a viable pregnancy." For this additional reason,

---

[2] To the extent Plaintiff seeks to dispute the denial of her claim for IVF as allegedly improper under her Plan terms, the appropriate vehicle is not a discrimination claim under Section 1557, but rather a claim for ERISA benefits pursuant to 29 U.S.C. Section 1132(a)(1)(B).

Plaintiff's Complaint fails to plausibly allege that her Plan terms intentionally discriminate against individuals in same-sex relationships and Plaintiff's Complaint should be dismissed as a result.

## V. CONCLUSION

WHEREFORE, BCBSIL requests that the Court dismiss Plaintiff's Complaint with prejudice and grant any other relief the Court deems necessary and just.

Date: August 5, 2022

Respectfully submitted,

*/s/ Meredith A. Shippee*
Martin J. Bishop
Bryan M. Webster
Meredith A. Shippee
REED SMITH LLP
10 S. Wacker Drive Suite 4000
Chicago, IL 60606
Tel. 312.207.1000
Fax 312.207.6400
mbishop@reedsmith.com
bwebster@reedsmith.com
mshippee@reedsmith.com

***Attorneys for Defendant Health Care Service Corporation, d/b/a Blue Cross and Blue Shield of Illinois***