UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KELSEY MURPHY, on behalf of herself and all others similarly situated,<br><br>*Plaintiff,*<br>v.<br><br>HEALTH CARE SERVICE CORPORATION d/b/a BLUE CROSS AND BLUE SHILED OF ILLINOIS;<br><br>*Defendant.* | **Case No. 1:22-cv-02656**<br><br>**Hon. Steven C. Seeger**<br><br>**Magistrate Judge Gabriel A. Fuentes** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

Plaintiff, Kelsey Murphy, hereby submits this memorandum of law in opposition to Defendant Health Care Service Corporation d/b/a Blue Cross and Blue Shield of Illinois (hereinafter "BCBSIL") Motion to Dismiss Plaintiff's Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion") and states as follows:

## I. INTRODUCTION

Plaintiff's complaint alleges that BCBSIL intentionally discriminates against Plaintiff Kelsey Murphy and other LGBTQ individuals by failing to provide equal access to fertility benefits. Specifically, BCBSIL's definition of "infertility" requires a covered individual in a same-sex relationship to shoulder out-of-pocket costs prior to being eligible for coverage of fertility treatment. BCBSIL, on the other hand, does *not*

1

require similar out-of-pocket payments by covered individuals in a heterosexual relationship before BCBSIL will cover the same fertility treatments. As such, the policy is discriminatory on its face. Ms. Murphy brings this claim under Section 1557 of the Affordable Care Act which prohibits discrimination on the basis of sexual orientation and gender identity. 42 U.S.C. 18116.

Plaintiff, Ms. Murphy, was enrolled in a BCBSIL HMO Policy that provides coverage for infertility treatments.[1] In 2020, 2021, and 2022, BCBSIL denied Ms. Murphy coverage for infertility treatments based on the provisions in her HMO policy/ benefit booklet. This policy is referenced in her Complaint and attached as Ex. A (hereinafter "2010 Policy"). In its Motion to Dismiss, BCBSIL identified two different benefit booklets in effect for Ms. Murphy during 2020-2022.[2] Regardless of what policy was in effect, all three Policies at issue contain discriminatory language. None of the Policies include in its definition of "infertility" the inability to reproduce as a same-sex couple ***without medical intervention.*** [3] Instead, BCBCIL's policies

---

[1] Plaintiff attached to her Complaint a copy of a BCBSIL benefit booklet with an effective date of September 23, 2010. BCBSIL contests the applicability of this policy to Ms. Murphy's claims. Plaintiff is unaware of when this policy was no longer in effect as it was provided to her by her employer's benefits administrator. In any event, all policies discriminate against LGBTQ individuals—as evidenced by the fact that Ms. Murphy's claim was denied and she was subsequently told, earlier this year, that she still does not qualify for coverage.

[2] Defendant's Policies are Defendant's Ex. A to Declaration of Rob Adams, effective July 1, 2020–June 30, 2021 (hereinafter "2020-2021 Policy"); and Defendant's Ex. B to Declaration of Rob Adams, effective July 1, 2021–June 30, 2022 (hereinafter "2021-2022 Policy"). The relevant portions pertaining to Infertility Treatment are identical in Defendant's 2020-2021 and 2021-2022 Policies.

[3] Under Illinois' recently revised law, a policy cannot impose any exclusions, limitations or other restrictions on coverage of any fertility services. 215 ILCS 5/356m(d). Further under 215 ILCS 5/356m (c)(2), "infertility" includes a "person's inability to reproduce…with a partner without medical intervention." See Compl. at ¶29,30.

define infertility as "the inability to conceive a child after one year of unprotected sexual intercourse" and goes on to spell out sexual intercourse as a "sexual union ***between a male and a female***." Compl. at Ex. A, p. 29; Def. MTD at Ex. A, 46; Ex. B, 41 (emphasis added). All the policies at issue require that Ms. Murphy, and other similarly situated LGBTQ individuals, attempt for one year to conceive through medically based and supervised methods of conception, such as artificial insemination, prior to BCBSIL's provision of infertility benefits. Those are the policy requirements, and that is what Ms. Murphy was told when her request for coverage was denied. Compl. at ¶35.

BCBSIL does not deny the policy language of Ms. Murphy's 2010 Policy is discriminatory. Nor does BCBSIL admit that under the terms of the 2010 Policy, coverage should have been provided. Instead, BCBSIL attaches two new policies with nearly identical policy language and the same requirements in an attempt to pull wool over this Court's eyes. The fact that—for purposes of litigation—BCBSIL and its attorneys want to now fabricate a (theoretical) non-discriminatory interpretation of the clearly-discriminatory policy language does not warrant dismissal of Plaintiff's case. The policies are intentionally discriminatory on their face for two reasons: (1) the definition of "infertility" does not include a person's inability to reproduce as a same sex couple without medical intervention; and (2) there is no explicit waiver of the "one year requirement" for a person who is "infertile" because they are part of

same sex couple. Thus, Plaintiff has plausibly pled a claim and Defendant's motion to dismiss should be denied.[4]

## II. <u>FACTUAL BACKGROUND</u>

BCBSIL denied coverage for Ms. Murphy's invitro-fertilization in 2020 because she did not undergo medically supervised donor inseminations for one year. BCBSIL claims that the addition of the phrase "the inability to attain or maintain a viable pregnancy" makes the policies in effect from 2020-2022 different than the one Plaintiff attached to her complaint. The plain language of the policy speaks for itself. Plaintiff's 2010 Policy[5] states:

**Infertility Treatment**

Benefits will be provided for Covered Services rendered in connection with the diagnosis and/or treatment of infertility including, but not limited to, in vitro fertilization, uterine embryo lavage, embryo transfer, artificial insemination, gamete intrafallopian tube transfer, zygote intrafallopian tube transfer, low tubal ovum transfer and intracytoplasmic sperm injection.

Infertility means the inability to conceive a child after one year of unprotected sexual intercourse or the inability to sustain a successful pregnancy. The one year requirement will be waived if your Physician determines that a medical condition exists that renders conception impossible through unprotected sexual intercourse, including but not limited to, congenital absence of the uterus or ovaries, absence of the uterus or ovaries due to surgical removal due to a medical condition, involuntary sterilization due to Chemotherapy or radiation treatments; or, efforts to conceive as a result of one year of medically based and supervised methods of conception, including artificial insemination, have failed and are not likely to lead to a successful pregnancy.

---

[4] To the extent this Court finds Plaintiff's complaint has not put Defendant's fair notice of her claim or has not pled factual matter to state a claim to relief plausible on its face, Plaintiff requests time to amend her complaint at law pursuant to Federal Rule of Civil Procedure 15.
[5] Compl. at Ex. A, p. 29.

4

It is undisputed the 2010 Policy requires individuals who cannot conceive through intercourse due to their sexual orientation or gender identity to pay out of pocket for one year of medically based and supervised methods of conception before BCBS will provide them with coverage for fertility treatments. The 2020 – 2022 Policies[6] state:

> **Infertility Treatment**
>
> Benefits will be provided for Covered Services rendered in connection with the diagnosis and/or treatment of infertility including, but not limited to, in vitro fertilization, uterine embryo lavage, embryo transfer, artificial insemination, gamete intrafallopian tube transfer, zygote intrafallopian tube transfer, low tubal ovum transfer and intracytoplasmic sperm injection.
>
> Infertility means the inability to conceive a child after one year of unprotected sexual intercourse, or the inability to conceive after one year of attempts to produce conception, the inability to conceive after an individual is diagnosed with a condition affecting fertility, or the inability to attain or maintain a viable pregnancy or sustain a successful pregnancy. The one year requirement will be waived if your Physician determines that a medical condition exists that renders conception impossible through unprotected sexual intercourse, including but not limited to, congenital absence of the uterus or ovaries, absence of the uterus or ovaries due to surgical removal due to a medical condition, involuntary sterilization due to Chemotherapy or radiation treatments; or, efforts to conceive as a result of one year of medically based and supervised methods of conception, including artificial insemination, have failed and are not likely to lead to a successful pregnancy.

All three Policies specifically outline instances where the one-year requirement of sexual intercourse is waived – conspicuously absent is: (1) "infertility" defined as a person's inability to reproduce as a same sex couple without medical intervention; and (2) an explicit waiver of the "one year requirement" for a person's inability to

---

[6] The language included herein is from the 2020-2021 Policy. The relevant language regarding "infertility treatment" in Defendant's 2021-2022 policy is identical and has been omitted for brevity. See Def. MTD at Ex. A, 46, Ex. B, 41.

5

reproduce with a same-sex partner without medical intervention. Defendant's contention that the 2020-2022 Policies do not have the same one-year requirement boils down to the addition of one phrase: an "inability to attain a viable pregnancy." As discussed below, that phrase does not render the policies non-discriminatory.

### III.  LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510,1520 (7th Cir. 1990). To survive a motion to dismiss, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a complaint, the court must accept all well-pleaded allegations as true and draw all reasonable inference in plaintiff's favor. *Iqbal*, 556 U.S. at 678.

### IV.  ARGUMENT

#### A.  Ms. Murphy sufficiently pled facts showing BCBSIL intentionally discriminated against her based on her sexual orientation.

Ms. Murphy alleges intentional discrimination on the basis of sexual orientation. *See* Compl. at ¶¶ 24, 25, 26, 27, 29, 59. BCBSIL does not dispute that Section 1557 of the Affordable Care Act allows a private right of action to enforce the prohibition on intentional sex discrimination including discrimination on the basis of

6

sexual orientation or gender. This Court must examine whether Plaintiff's alleged facts plausibly support an inference of discrimination "on the basis of sex[ual orientation.]" *Doe v. Purdue Univ.*, 928 F. 3d 652, 677-68 (7th Cir. 2019) (holding that "while [plaintiff] may face problems of proof, and the factfinder might not buy the inferences that he's selling…his claim should…[make] it past the pleading stage). Under §1557 of the ACA, Title IX's enforcement mechanism applies to Plaintiff's discrimination claim; Plaintiff must (and has) plead facts supporting intentional sex discrimination. *Briscoe v. Health Care Ser. Corp.*, 281 F. Supp. 3d 725, 737-38 (N.D. Ill., 2017) (plaintiffs alleged that Health Care Service Corporation and BCBSIL violated the ACA by failing to cover lactation counseling services and providing "disparate levels of health benefits… for breastfeeding and lactating women.").[7]

Here, Ms. Murphy has alleged facts supporting her claim that she was *intentionally* discriminated against on the basis of her sexual orientation. Specifically, she alleges that BCBSIL's policy, on its face, engages in sex discrimination by denying LGBTQ individuals equal access to fertility treatment. Compl. at ¶1. Ms. Murphy, as a lesbian, can only conceive with female partners through fertility treatments. *Id.* at ¶2. BCBSIL requires individuals who cannot conceive through intercourse—**"*between a male and a female*"**—due to their sexual orientation or gender identity to pay out of pocket for one year of medically based and supervised methods of conception, before BCBSIL will provide them coverage. Compl.

---

[7] *Briscoe* creates no conflict with this case. In *Briscoe*, unlike here, the plaintiff pled a disparate impact (not intentional) sexual discrimination claim which is impermissible under section 1557 and Title IX.

at ¶¶4,5,6 Ex. A, p. 29; Def. MTD at Ex. A, 46; Ex. B, 41. Plaintiff has further alleged that BCBSIL's "policy language openly discriminates against Plaintiff and other LGBTQ individuals on the basis of their sex, sexual orientation and/or gender identity" and that its discrimination is "deliberate." Compl. at ¶¶7, 11. BCBSIL denies these allegations of discrimination, but they are directly supported by facts alleged in the Complaint; specifically, Ms. Murphy was denied coverage for infertility treatments based upon the fact that, as an LGBTQ individual, she could not satisfy the requirements of the Policy. Compl. at ¶¶ 2,4,5,6,21-28,32,35,38,40. Further, under the Policy, an individual who has the capacity to become pregnant through sexual intercourse with their partner can demonstrate infertility by simply representing to BCBSIL that that they have had 12 months of "unprotected sexual intercourse" without a pregnancy and no out of pocket costs are imposed for those individuals to obtain coverage. *Id.* at ¶24, 25. BCBSIL does not, and cannot, deny those facts.

### A. BCBSIL failed to identify a material difference in its 2010, 2020-2021, and 2021-2022 Policies.

BCBSIL simply asserts that Ms. Murphy's claim for fertility treatments should have fallen under one of the limited exceptions to the Policies' "one year of unprotected sexual intercourse" requirement. Def. MTD at 6. Specifically, BCBSIL argues that an "individual in a same-sex relationship – like Plaintiff – *would* be considered to have an 'inability to attain a viable pregnancy' and therefore *would* meet the definition of "infertility" and qualify for infertility benefits by virtue of being in a same-sex relationship." *Id.* (emphasis added). Of course, there is nothing

8

supporting such a creative interpretation of the policy language—neither in BCBSIL's Policies, nor its brief and supporting affidavit.

BCBSIL claims that this language is "materially different" than the language in the policy Plaintiff attached to the Complaint – but fails to explain how. Def. MTD at 3 fn. 1. The policy itself provides no definition of the "inability to attain or maintain a viable pregnancy." See Def. MTD at Exs. A and B. And the inclusion of that language does not provide coverage for people, like Ms. Murphy, who cannot become pregnant without medical intervention because of *who they are*—LGBTQ—and not because of a physical or medical "inability" to do so. This is evidenced by the fact that Ms. Murphy was told four times she did not qualify for coverage under the express terms of her policy. Compl. at ¶¶35,37,38,43. Only in retrospect, in an attempt to avoid liability for its intentionally discriminatory policy—and only after the State of Illinois forced insurance companies like BCBSIL to *start* providing equal access to fertility treatments to LGBTQ individuals[8] —does BCBSIL attempt to claim people like Ms. Murphy "would be" covered under the terms of the very policies that it used to deny them coverage in the first place.

Ms. Murphy is not required to plead specific facts under notice pleading requirements, only lay out facts or conclusory allegations sufficient to put BCBSIL on notice of her claim and from which this Court can infer that she has a cause of action. *Ludlow v. Northwestern Uni.*, 125 F. Supp. 3d 783,792 (N.D.Ill. August 28, 2015) *citing Torrespico v. Columbia Coll.*, No. 97 C 8881, 1998 U.S. Dist. LEXIS

---

[8] See 215 ILCS 5/356m(d); 215 ILCS 5/356m(c)(2)

15714, 1998 WL 703450, at *18 (N.D. Ill. Sept. 30, 1998). At the very least, it is *plausible* that she was denied fertility coverage on the basis of her sexual orientation or gender, and that BCBSIL's policies intentionally discriminate against LGBTQ individuals.

## V. CONCLUSION

For the reasons above, the Court should deny BCBSIL's Motion to Dismiss.

Dated: September 2, 2022

Respectfully Submitted,
*/s/ Edward A. Wallace*
Edward A. Wallace
Mark R. Miller
Molly C. Wells
Wallace Miller
150 N. Wacker Dr., Suite 1100
Chicago, IL 60606
T: 312.261.6193
F: 312.275.8174
E: eaw@wallacemiller.com
   mrm@wallacemiller.com
   mcw@wallacemiller.com

*Counsel for Plaintiff*