UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KELSEY MURPHY, on behalf of herself and all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>HEALTH CARE SERVICE CORPORATION d/b/a BLUE CROSS AND BLUE SHIELD OF ILLINOIS,<br><br>Defendant. | Case No. 1:22-cv-02656<br><br>Hon. Steven C. Seeger<br><br>Magistrate Judge Gabriel A. Fuentes |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

Defendant Health Care Service Corporation, a Mutual Legal Reserve Company operating in Illinois as Blue Cross and Blue Shield of Illinois ("BCBSIL"), hereby submits this reply in support of its Motion to Dismiss Plaintiff's Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion") (ECF Nos. 15, 16) and states as follows:

**I.  INTRODUCTION**

Plaintiff's Complaint asserts one Count against BCBSIL for sex discrimination under Section 1557 of the Affordable Care Act in connection with alleged denials of infertility benefits in November 2020 and summer of 2021. Compl. ¶¶ 35, 37, 56-63. As detailed in BCBSTX's opening Motion, the plain language of the applicable definition of "Infertility" in Plaintiff's HMO benefit plan (the "Plan") does not, in fact, require a covered individual in a same-sex relationship to shoulder any out-of-pocket costs prior to being eligible for infertility benefits. As such, Plaintiff's Complaint fails to plead any facts supporting a plausible inference that BCBSIL

intentionally discriminates against LGBTQ members on the basis of their sexual orientation, and Plaintiff's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiff's Response to BCBSTX's Motion (the "Response") (ECF No. 19) does not change this result. First, Plaintiff must plead facts to support at least a plausible inference of intentional discrimination on the basis of sex, and she has not done. Instead, Plaintiff misstates the applicable pleading standard for a Section 1557 sex discrimination claim by arguing she does not have to plead specific facts under notice pleading, which is incorrect.

Second, the 2010 Plan attached to the Complaint does not apply to this dispute; rather, Plaintiff's 2020 and 2021 Plans, effective July 1, 2020 and 2021 respectively, apply. And contrary to Plaintiff's assertions in Response, there are clear material differences between the inapplicable 2010 Plan and the applicable 2020 and 2021 Plans' definitions of "Infertility." Specifically, the 2020 and 2021 Plans that are applicable to this dispute have six ways a member can qualify for Infertility benefits, whereas the older inapplicable 2010 Plan had only one.

Third, under Illinois law, the applicable 2020 and 2021 Plans' definition of Infertility must be read as a whole and the Court must give meaning to each provision, just as it would for any contract. Under the plain language of the applicable definition, LGBTQ members in same-sex relationships like Plaintiff would qualify for infertility benefits without any out-of-pocket or medical intervention prerequisites because the member would be "unable to attain" a viable pregnancy. In contrast, Plaintiff's proposed interpretation of the definition as purportedly requiring LGBTQ members to pay out-of-pocket for a year of infertility treatments prior to obtaining benefits would require the Court to ignore a significant portion of the definition in contradiction of applicable Illinois contract interpretation principles.

Fourth, Plaintiff's argument that the Plan must be construed as discriminatory because it does not contain an "explicit waiver" for LGBTQ individuals seeking infertility benefits is not grounded in applicable law and tellingly Plaintiff cites no law for this assertion. Indeed, while Section 1557 prohibits discrimination on the basis of sex, it does not dictate specific language that must appear in health insurance plans.

Fifth and finally, while Plaintiff seeks leave to amend her Complaint, amendment would be futile. Under Section 1557, Plaintiff's pleading must support an inference of *intentional* discrimination. The applicable and relevant Plan definition of Infertility does not place any prerequisites on infertility benefits for members in same-sex relationships who are "unable to attain" a viable pregnancy by virtue of their sexual orientation. As such, Plaintiff cannot meet her burden to plead facts supporting a plausible inference that BCBSIL *intentionally* discriminated against her on the basis of sex, and her Complaint should be dismissed with prejudice.

## II. ARGUMENT

### A. Plaintiff Misstates the Applicable Pleading Standard to Assert a Claim for Intentional Sex Discrimination.

Under Seventh Circuit law, to state a claim for intentional sex discrimination under Section 1557 which applies the pleading standards of Title IX, Plaintiff must allege facts showing that "sex was a motivating factor" in the defendant's allegedly discriminatory actions. *Doe v. Purdue Univ.*, 928 F.3d 652, 667-68 (7th Cir. 2019). Put more directly, Plaintiff must allege sufficient facts that, "if true, raise a plausible inference that [BCBSIL] discriminated against [Plaintiff] on the basis of [Plaintiff's sexual orientation]." *Id.* Where a plaintiff does not plead facts "support[ing] the inference that [sexual orientation] bias was a motivating factor" behind the challenged conduct, the claim must be dismissed. *Ludlow v. Nw. Univ.*, 125 F. Supp. 3d 783, 792 (N.D. Ill. 2015).

Plaintiff argues that she is "not required to plead specific facts under notice pleading requirements" and that her "conclusory allegations" are sufficient to withstand a Rule 12(b)(6) Motion. Resp. p.9. This argument misstates the holdings of the cases on which Plaintiff relies. For example, in *Ludlow v. Northwestern University,* the Court held that Plaintiff failed to allege sufficient facts to state a plausible claim for sex discrimination under Title IX, explaining that while plaintiff "need not plead specific facts under notice pleading requirements, he must provide either facts or conclusory allegations **sufficient to put [defendant] on notice of his claim and from which the Court can infer that he has a cause of action**." *Ludlow v. Nw. Univ.*, 125 F. Supp. 3d 783, 792 (N.D. Ill. 2015) (emphasis added). Ultimately, the Court held Ludlow failed to state a claim because he did "not state any allegations that would support the inference that gender bias was a motivating factor in the sexual harassment finding." *Id.*

Similarly, in *Torrespico v. Columbia College,* the Court held that Plaintiff failed to allege "facts or conclusory allegations . . . from which the Court can infer he has a cause of action" because nothing in his complaint was "about plaintiff being denied anything because of his sex, as is required under Title IX." *Torrespico v. Columbia College*, No. 97-cv-8881, 1998 WL 703450 at *18 (N.D. Ill., Sept. 29, 1998). Instead, the Court held that Torrespico's complaint merely alleged that the defendant "failed to staff a sexual harassment committee in conformity with its internal rules." *Id.* This is strikingly similar to the present case where the facts and conclusory allegations in Plaintiff's Complaint do not support an inference that BCBSIL intentionally denied infertility benefits because of Plaintiff's sexual orientation, but rather might only support an inference that BCBSIL failed to adhere to the Plan language when it allegedly erred in denying Plaintiff's requests for infertility benefits.

In short, while Plaintiff is permitted under notice pleading standards to plead "facts or conclusory allegations," that does not absolve Plaintiff of the obligation to plead sufficient facts or conclusory allegations "that would support the inference that gender bias was a motivating factor in" BCBSIL's benefit denial. *Ludlow v. Nw. Univ.*, 125 F. Supp. 3d 783, 792 (N.D. Ill. 2015). As explained in BCBSIL's Motion, and in further detail below, Plaintiff fails to plead allegations supporting an inference that gender bias was a motivating factor in BCBSIL's benefit denial, and therefore fails to state a viable claim for relief. *Id.*

### B. The Court Should Disregard The 2010 HMO Plan Attached to Plaintiff's Complaint Because It Does Not Apply to Plaintiff's Claim.

Plaintiff's Response continues to suffer from the same fatal flaw as her Complaint, namely reliance on an outdated and superseded version of her insurance policy. In particular, the 2010 version of her HMO insurance policy never applied to Plaintiff since (a) she was not covered under the HMO plan until 2014 (Compl. ¶ 31), (b) it pre-dates the events giving rise to Plaintiff's Complaint by a decade (*Id.,* ¶ 35) (first benefit denial at issue was in November 2020), and (c) it differs materially from the relevant Plan language that was in effect when Plaintiff sought the services at issue. BCBSIL Memo in Support of Motion, ECF No. 16 ("Memo") at pp. 3, 6 (applicable Plans have multiple ways a member can qualify for infertility benefits without out-of-pocket costs compared to 2010 Plan).

Plaintiff attempts to casually dismiss her fatal pleading error by arguing that it does not matter which of the three Plans the Court looks at because all three contain identical discriminatory language. Resp. at p. 2. Plaintiff is wrong. In addition to not having standing to assert a claim based on the 2010 Plan under which Plaintiff admits she was not covered, the 2010 Plan has no

bearing on events that occurred in 2020 and 2021, and Plaintiff's assertion that all three Plans contain the same language is demonstrably false.[1]

First, Plaintiff, by her own admission, pleads that she first obtained coverage under the Plan in 2014 (Compl. ¶ 31), but asserts in her Response brief that the Plan attached to the Complaint was effective September 23, 2010 (Resp. p. 2, n.1). Accordingly, because by Plaintiff's own admission, she was never covered under the 2010 Plan, she therefore cannot plausibly allege any injury based on its terms, and the Court should disregard the 2010 Plan in its entirety. *Gold v. Ziff Communs. Co.*, 322 Ill. App. 3d 32, 45 (2001) ("Generally, only a party to a contract or those in privy with [a party] may sue to enforce it.")

Second, even if Plaintiff had been covered under the 2010 Plan, her Complaint alleges that the first time she sought and was improperly denied infertility benefits was a decade later, in November 2020. At that point, the 2010 Plan had been superseded by the 2020 Plan, effective as of July 1, 2020. Memo, Exh. 1, Adams Decl., ¶ 5. Similarly, the 2021 Plan effective as of July 1, 2021 superseded the 2020 Plan and applied to events that occurred after July 1, 2021. *Id.*, ¶6.

Third, the definition of "Infertility" in the 2010 Plan, on the one hand, and the 2020 and 2021 Plans, on the other, are materially different. The inapplicable 2010 Plan defines Infertility as follows:

> Infertility means the inability to conceive a child after one year of unprotected sexual intercourse or the inability to sustain a successful pregnancy. The one year requirement will be waived if your Physician determines that a medical condition exists that renders conception impossible through unprotected sexual intercourse, including but not limited to, congenital absence of the uterus or ovaries, absence of the uterus or ovaries due to surgical removal due to a medical condition, involuntary sterilization due to Chemotherapy or radiation treatments; or, efforts to conceive as

---

[1] A Court may properly consider "documents that are central to the complaint and are referred in it" when deciding a motion to dismiss. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citing additional cases). Here, because the Plan language is central to Plaintiff's Complaint, the Court may properly consider the 2020 and 2021 Plans when deciding this Motion without converting it to a summary judgment motion. *Id.*

a result of one year of medically based and supervised methods of conception, including artificial insemination, have failed and are not likely to lead to a successful pregnancy.

Compl., Exh. 1 at p. 29.

In contrast, the 2020 and 2021 Plans' definition of "Infertility" applicable to this dispute states:

> Infertility means the inability to conceive a child after one year of unprotected sexual intercourse, <u>the inability to conceive after one year of attempts to produce conception, the inability to conceive after an individual is diagnosed with a condition affecting fertility, or the inability to attain or maintain a viable pregnancy or sustain a successful pregnancy</u>. The one year requirement will be waived if your Physician determines that a medical condition exists that renders conception impossible through unprotected sexual intercourse, including but not limited to, congenital absence of the uterus or ovaries, absence of the uterus or ovaries due to surgical removal due to a medical condition, involuntary sterilization due to Chemotherapy or radiation treatments; or, efforts to conceive as a result of one year of medically based and supervised methods of conception, including artificial insemination, have failed and are not likely to lead to a successful pregnancy.

Memo, Exh. 1, Adams Decl., Exh. A at p. 46; Exh. B at p. 41 (emphasis added). The underlined portion of the latter definition is absent from the inapplicable 2010 Plan. Thus, contrary to Plaintiff's assertions in her Response, the two definitions are plainly different on their face.

Furthermore, the additional language in the 2020 and 2021 Plans is material because it greatly expands the ways in which a member can qualify for infertility benefits without being diagnosed with a medical condition that renders conception impossible, and therefore changes an essential element of the insurance contract. *Miller's Blasting Serv. v. Tex. AGA, Inc.*, 292 F. App'x 492, 494 (7th Cir. 2008)("[T]he subject, the period, the amount, and the rate of the insurance" are the material terms of an insurance contract.)

Under the 2010 plan, the definition of infertility was "the inability to conceive a child after one year of unprotected sexual intercourse or the inability to sustain a successful pregnancy," whereas under the 2020 and 2021 Plans, the definition of infertility has been significantly

expanded to include not only "the inability to conceive a child after one year of unprotected sexual intercourse," but *also* "the inability to attain or maintain a viable pregnancy or sustain a successful pregnancy." Memo, Exh. 1, Adams Decl., Exh. A at p. 46; Exh. B at p. 41. Accordingly, contrary to Plaintiff's arguments in Response, the differences between the inapplicable 2010 Plan and 2020 and 2021 Plan definitions of Infertility are material and cannot be so casually dismissed.

**C.     Plaintiff's Interpretation of the Applicable Plan Language Contradicts Illinois Law Regarding Contract Interpretation**

Next, Plaintiff argues that it does not matter whether the Court reviews the 2010 Plan or the 2020 and 2021 Plans because they both say the same thing and require a same-sex couple to pay out of pocket for fertility treatment for a year before being able to access infertility benefits. Resp. at p. 7. To reach this conclusion, however, the Court would be required to ignore a significant portion of the 2020 and 2021 Plans' definition of Infertility, which is in contradiction of governing Illinois contract interpretation law.

When interpreting the language of an insurance contract, Illinois courts apply the general rules governing the interpretation of contracts. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). "A court's primary objective in construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed by the language of the policy." *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 362 (2006). "Like other contracts, a court should construe an insurance policy as a whole, giving effect to every provision." *Menard, Inc. v. Country Preferred Ins. Co.*, 2013 IL App (3d) 120340, ¶ 18; "All the provisions of the insurance contract, rather than an isolated part, should be read together to interpret it." *Transamerica Ins. Co. v. South,* 975 F.2d 321, 327 (7th Cir. 1992). "If the words used in the policy are clear and unambiguous, then the court must give them their plain and ordinary meaning." *Menard, Inc.*, 2013 IL App (3d) 120340, ¶ 18.

Here, Plaintiff incorrectly argues that the 2010 Plan and 2020 and 2021 Plans *all* require:

> that Ms. Murphy, and other LGBTQ individuals, attempt for one year to conceive through medically based and supervised methods of conception, such as artificial insemination, prior to BCBSIL's provision of infertility benefits. Those are the policy requirements . . . .

Resp. at p.7. This is certainly not true under the 2020 and 2021 Plans. To reach this conclusion the Court would have to disregard entire sections of the 2020 and 2021 Plan definitions of Infertility and read certain portions of the definition in a vacuum, which contradicts applicable contract interpretation standards requiring the Court to construe the policy as a whole and give effect to every provision. *See Transamerica Ins. Co.*, 975 F.2d at 327; *Menard, Inc.*, 2013 IL App (3d) 120340, ¶ 18.

Analyzing the plain language of the two definitions of Infertility, under the 2010 Plan, where a member did not have a medical condition rendering conception impossible, a beneficiary could qualify for infertility benefits only if they could establish the "inability to conceive a child after one year of unprotected sexual intercourse." Compl. ¶ 21. In contrast, under the applicable 2020 and 2021 plans, where a member does not have a medical condition rendering conception impossible, there are at least *six* ways to qualify for infertility benefits, including (1) "one year of unprotected sexual intercourse;" (2) the inability to conceive after one year of attempts to produce conception; (3) the inability to conceive after an individual is diagnosed with a condition affecting fertility; (4) the inability to attain a viable pregnancy; (5) the inability to maintain a viable pregnancy; or (6) the inability to sustain a successful pregnancy. Memo, Exh. 1, Adams Decl., Exh. A at p. 46; Exh. B at p. 41.

Notably, by their plain language, not all of these six ways to qualify for infertility benefits without having a medical condition rendering conception impossible would require any member, much less a LGBTQ member, to attempt for one year to conceive through medical intervention or

pay out-of-pocket for anything before being eligible for infertility benefits. *Id.* In short, Plaintiff's argument that the 2020 and 2021 Plans require "Ms. Murphy, and other LGBTQ individuals, attempt for one year to conceive through medically based and supervised methods of conception" is simply not supported by the plain language of Plaintiff's applicable Plan. While that is one way to qualify for infertility benefits under the 2020 and 2021 Plans, it is not the only one, and in order to find otherwise, the Court would need to ignore significant portions of the 2020 and 2021 Plan definitions of infertility, in contravention of Illinois contract interpretation law. *See Transamerica Ins. Co.,* 975 F.2d at 327 ("All the provisions of the insurance contract, rather than an isolated part, should be read together to interpret it."); *Menard, Inc.,* 2013 IL App (3d) 120340, ¶ 18 ("Like other contracts, a court should construe an insurance policy as a whole, giving effect to every provision.")

> D. **Section 1557 Does Not Mandate An "Explicit Waiver" For Same-Sex Couples In Insurance Contracts**

Section 1557 prohibits discrimination on the basis of sex in providing healthcare benefits, but it does not mandate any particular language that must be included in an insurance policy. 42 U.S.C. § 18116(a). Neither does Illinois law.[2] *See* 215 ILCS 5/356m(c)(2). In her Response, Plaintiff argues that the 2020 and 2021 Plan language intentionally discriminates because of the absence of any "explicit waiver" in the Plan definition of infertility stating something along the lines of "same sex couples are exempt from the one year requirement." Resp. at p. 3, 5. This argument fails for two reasons. First, as noted above, Section 1557 does not place specific verbiage

---

[2] Plaintiff also cites to Illinois law defining infertility in her Complaint and Response, but she does not assert any cause of action under this law, nor could she, because the law did not go into effect until January 1, 2022. 215 ILCS 5/356m(c)(2). In her Complaint, Plaintiff does not allege that she was subject to any infertility benefit denial in 2022, but rather alleges that "BCBSIL informed Ms. Murphy that there were no changes in the benefits under her policy from 2021 to 2022." Compl. ¶ 43.

requirements on insurance policies and Plaintiff cites to no other legal support for her "explicit waiver" argument. 42 U.S.C. § 18116(a).

Second, to the extent Plaintiff is suggesting that the 2020 and 2021 Plan language is ambiguous, *i.e.* facially neutral, this position undermines any plausible inference that BCBSIL *intentionally* discriminates on the basis of sex, but rather would only support an inference of alleged disparate impact discrimination based on application of a facially neutral policy. This is not a basis for a sex discrimination claim under Title IX or Section 1557. *See Briscoe v. Health Care Serv. Corp.*, 281 F. Supp. 3d 725, 738 (N.D. Ill. 2017) (Section 1557 does not provide a private right of action for disparate impact discrimination on the basis of sex). Furthermore, BCBSIL disagrees that the plain language of the Plans' definition of Infertility is ambiguous. Indeed, "a policy term is not ambiguous simply because the parties disagree about its meaning." *Cent. Ill. Pub. Serv. Co. v. Amer. Empire Surplus Lines Ins. Co.*, 267 Ill. App. 3d 1043, 1048, 642 N.E.2d 723, 726, 204 Ill. Dec. 822 (1st Dist. 1994).

### E. Leave to Amend Would be Futile Because Plaintiff Cannot State a Claim For Intentional Discrimination Under the Applicable Plan Language

Plaintiff asks for leave to amend, but such leave would be futile because Plaintiff will not be able to plead facts supporting an inference of *intentional* sex discrimination based on the applicable 2020 and 2021 Plans under the theory she asserts in her Complaint. *See Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001) (the court may deny leave to amend where amendment would be futile). Specifically, Plaintiff alleges that BCBSIL intentionally places out-of-pocket cost requirements on LGBTQ members in same-sex relationships seeking infertility benefits that are not imposed on members in heterosexual relationships. Compl. ¶¶ 5, 23, 26; Resp. at pp. 2, 7. As noted above, however, this argument is directly contradicted by the applicable Plan language which provides that an LGBTQ member in a same-sex relationship

would qualify for infertility benefits without incurring any out-of-pocket costs or other prerequisites because the member would be unable "to attain a viable pregnancy" by virtue of their sexual orientation. Memo. at p. 6. Thus, the applicable Plan language is facially neutral and places no additional financial burden on either same-sex or heterosexual couples to qualify for infertility benefits. While Plaintiff dismisses BCBSTX's position by accusing "BCBSIL and its attorneys . . . [of] fabricat[ing] a (theoretical) non-discriminatory interpretation of the clearly-discriminatory policy," Resp. at p. 3, Plaintiff's argument has no merit as it is untethered to the benefit plan language that is at issue. BCBSIL's position, however, is grounded upon the plain language of the 2020 and 2021 Plan definitions of Infertility, as explained above. *See supra*, Section II(C). In short, Plaintiff has not, and cannot, plead facts or conclusions to establish intentional discrimination because the plain language of her Plan does not support that inference. Accordingly, the Court should dismiss Plaintiff's Complaint and deny leave to amend as futile. *Bethany Pharmacal Co.*, 241 F.3d at 861.

### III. CONCLUSION

For the foregoing reasons and all the reasons set for in its Memorandum in Support of its Motion to Dismiss, BCBSIL requests that the Court dismiss Plaintiff's Complaint with prejudice and grant any other relief the Court deems necessary and just.

Date: August 16, 2022

                                                                                                 Respectfully submitted,

*/s/Meredith A. Shippee*
Martin J. Bishop
Bryan Webster
Meredith A. Shippee
REED SMITH LLP
10 S. Wacker Drive Suite 4000
Chicago, IL  60606
Tel. 312.207.1000
Fax. 312.207.6400
mbishop@reedsmith.com
bwebster@reedsmith.com
mshippee@reedsmith.com