UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KELSEY MURPHY, on behalf of herself and all others similarly situated,<br><br>    *Plaintiff*,<br>-against-<br><br>HEALTH CARE SERVICE CORPORATION d/b/a BLUE CROSS AND BLUE SHILED OF ILLINOIS;<br><br>    *Defendant*. | **FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

   Plaintiff Kelsey Murphy, by and through her attorneys, Wallace Miller, on behalf of herself and others similarly situated, for her First Amended Class Action Complaint alleges, upon personal knowledge as to herself and information and belief as to other matters, as follows:

## PRELIMINARY STATEMENT

   1. This class action challenges Health Care Service Corporation d/b/a Blue Cross and Blue Shield of Illinois' (hereinafter "BCBSIL") discriminatory health insurance policy that, on its face, engages in sex discrimination by denying LGBTQ (lesbian, gay, bisexual, transgender, queer, intersex, or non-binary) individuals equal access to fertility treatment.

   2. Plaintiff Kelsey Murphy and her partner, like many LGBTQ individuals, want to have children. And, like many LGBTQ individuals, Ms. Murphy cannot conceive through intercourse with her partner and can become pregnant only through fertility treatments such as intrauterine insemination ("IUI") and in vitro fertilization ("IVF").

   3. At all times relevant, Ms. Murphy was enrolled in BCBSIL's Blue Cross Blue Shield Blue health insurance policy (the "Policy"), which provides broad coverage for IUI and IVF.

1

4. BCBSIL's Policy provides immediate coverage, without any out-of-pocket cost, to individuals based on their representation that they have not gotten pregnant after having unprotected sexual intercourse for 12 months.

5. But BCBSIL's same Policy requires individuals who cannot conceive through intercourse due to their sexual orientation or gender identity to pay *out of pocket* for one year of medically based and supervised methods of conception, including artificial insemination, *before* BCBSIL will provide them with coverage for fertility treatments.

6. Because of BCBSIL's Policy, Ms. Murphy and her partner, and all other similarly situated LGBTQ individuals, have been forced to pay tens of thousands of dollars out of pocket—in Ms. Murphy's case, roughly $19,000 for one successful pregnancy—that others are not required to pay in order to become pregnant.

7. BCBSIL's Policy language openly discriminates against Plaintiff and other LGBTQ individuals based on their sex, sexual orientation, and/or gender identity and violates their rights under Section 1557 of the Patient Protection and Affordable Care Act ("ACA").

8. BCBSIL's discriminatory Policy is an illegal tax on LGBTQ individuals that denies the equal rights of LGBTQ individuals to have children.

9. At best, these individuals incur great costs due to BCBSIL's Policy language.

10. At worst, these exorbitant costs are prohibitive and entirely prevent people who are unable to shoulder them—disproportionately LGBTQ people—from becoming pregnant and starting a family.

11. BCBSIL's discrimination is deliberate. It has continued to enforce this discriminatory Policy against Ms. Murphy and other LGBTQ individuals despite the passage of

Section 1557, and despite the clear definition of sex discrimination under federal and state law to include LGBTQ individuals.

12. Plaintiff brings this case now, on behalf of herself and all others who are unable to conceive through intercourse due to their sexual orientation or gender identity, to end BCBSIL's willful disregard of federal and state nondiscrimination law by prohibiting BCBSIL from implementing and enforcing this discriminatory policy in its Illinois health plans.

## JURISDICTION AND VENUE

13. This Court has jurisdiction under 28 U.S.C. § 1331 as this action arises under 42 U.S.C. § 18116(a).

14. This Court has supplemental jurisdiction over the pendent state and city law claims under 28 U.S.C. § 1367(a).

15. This Court has personal jurisdiction over BCBSIL because it is headquartered in this District and/or conducts substantial business in Illinois.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts, events, and omissions giving rise to this action occurred in the Northern District of Illinois and Plaintiff resides in this District.

## THE PARTIES

17. Plaintiff Kelsey Murphy is a 33-year-old woman and is a citizen of the United States. At all relevant times, Ms. Murphy has been a resident of the State of Illinois, and is currently residing in McHenry, Illinois. She has had health insurance provided and administered by BCBSIL since 2014.

18. Defendant Health Care Service Corporation d/b/a Blue Cross Blue Shield of Illinois ("BCBSIL") is a company incorporated under the laws of the State of Illinois and whose principal

3

place of business is in Chicago, Illinois. BCBSIL is an insurance provider that supplies and administers health insurance plans in the State of Illinois.

## FACTUAL ALLEGATIONS

### I. BCBSIL's Discriminatory Policy

19. At all times relevant, Ms. Murphy has been enrolled in the Policy.

20. Under the Policy, BCBSIL covers services "rendered in connection with the diagnosis and/or treatment of infertility."

21. "Infertility" is defined under the Policy as:

> the inability to conceive a child *after one year of unprotected sexual intercourse*, or the inability to conceive after one year of attempts to produce conception, the inability to conceive after an individual is diagnosed with a condition affecting fertility, or the inability to attain or maintain a viable pregnancy or sustain a successful pregnancy. The one year requirement will be waived if your Physician determines that a medical condition exists that renders conception impossible through unprotected sexual intercourse, including but not limited to, congenital absence of the uterus or ovaries, absence of the uterus or ovaries due to surgical removal due to a medical condition, involuntary sterilization due to Chemotherapy or radiation treatments; or, efforts to conceive as a result of one year of medically based and supervised methods of conception, including artificial insemination, have failed and are not likely to lead to a successful pregnancy.

22. The Policy defines "unprotected sexual intercourse" as the "sexual union between a male and female, without the use of any process, device or method that prevents conception, including but not limited to, oral contraceptives, chemicals, physical or barrier contraceptives, natural abstinence or voluntary permanent surgical procedures and includes appropriate measures to ensure the health and safety of sexual partners."

23. There are four explicit ways to meet BCBSIL's definition of infertility: (1) a year of "unprotected sexual intercourse"; (2) a diagnosis of a medical condition rendering conception impossible through unprotected sexual intercourse; (3) the inability to attain or maintain a viable

pregnancy or sustain a successful pregnancy; or (4) pay out of pocket for a year of "medically based and supervised methods of conception" (*e.g.*, Intrauterine insemination ("IUI")).

24. The plain language of the Policy does not place any limits or qualifiers on the phrase "attain or maintain a viable pregnancy or sustain a viable pregnancy"; therefore, the Policy excludes women in same sex relationships with no impediments to childbearing.

25. Under this Policy, an individual who has the capacity to become pregnant through sexual intercourse with their partner can demonstrate infertility by simply representing to BCBSIL that they have had 12 months of "unprotected sexual intercourse" without a pregnancy.

26. BCBSIL imposes no out-of-pocket cost for such individuals to meet BCBSIL's definition of infertility.

27. But for Ms. Murphy and other LGBTQ individuals, the only way to meet BCBSIL's definition of infertility—absence a diagnosed medical condition making conception "impossible"—is to pay for 12 months of a costly procedure like IUI.

28. BCBSIL therefore imposes significant out-of-pocket costs on such LGBTQ individuals that it does not impose on others before allowing LGBTQ individuals to qualify for BCBSIL's insurance coverage for treatment of infertility.

29. Once a member qualifies for coverage under the Policy, BCBSIL covers "treatment of infertility including, but not limited to, in vitro fertilization, uterine embryo lavage, embryo transfer, artificial insemination, gamete intrafallopian tube transfer, zygote intrafallopian tube transfer, low tubal ovum transfer and intracytoplasmic sperm injection."

30. Under Illinois' recently revised law, "a policy …may [not] impose any exclusions, limitations, or other restrictions on coverage of any fertility services based on a covered individual's participation in fertility services provided by or to a third party, nor may it

impose deductibles, copayments, coinsurance, benefit maximums, waiting periods, or any other limitations on coverage for the diagnosis of infertility, treatment for infertility, and standard fertility preservation services, except as provided in this Section, that are different from those imposed upon benefits for services not related to infertility." 215 ILCS 5/356m(d).

31. Under Illinois' revised law, 215 ILCS 5/356m(c)(2), "infertility" includes "a person's inability to reproduce either as a single individual or with a partner without medical intervention."

## II. As a Same-Sex Couple, Ms. Murphy and Her Partner Needed—but were Denied Coverage for—Fertility Treatments to Become Pregnant and Have Their First Child

32. Ms. Murphy has been covered by a BCBSIL policy since 2014. Upon information and belief, the Plaintiff's HMO Plan effective from July 1, 2020 to June 30, 2021, is attached as Exhibit A.

33. Because Ms. Murphy cannot conceive through sexual intercourse with her partner, she requires fertility treatments, specifically IUI and/or IVF, to get pregnant.

34. In the summer of 2020, Ms. Murphy and her partner decided to start their family and first attempted to become pregnant through intra-cervical insemination (ICI). These efforts did not result in a pregnancy.

35. In the fall of 2020, Ms. Murphy began the process necessary to undergo in vitro fertilization (IVF) under the belief that her treatment would be covered by the Policy.

36. In November 2020, Ms. Murphy was informed by her doctor's office that BCBSIL had denied coverage for IVF treatments due to her not meeting the criteria of the Policy.

37. As she would have had to pay $10,650 out-of-pocket for the IVF cycle, she decided not to go through with the treatment at that time.

6

38. In the summer of 2021, Ms. Murphy decided to restart the process for IVF and—because she was again informed that the treatments would not be covered by the Policy—to pay out-of-pocket for all associated costs.

39. In August 2021, Ms. Murphy became pregnant through IVF, but unfortunately experienced a miscarriage 8 weeks into that pregnancy. BCBSIL denied coverage for follow-up care at her fertility clinic.

40. Complications from Ms. Murphy's miscarriage led to hospitalization and the need for a blood transfusion and surgery.

41. BCBSIL's Policy discriminates against Ms. Murphy and other individuals based on their sexual orientation or gender identity and requires them to pay out-of-pocket for fertility treatments as a prerequisite to receiving coverage for such services.

42. As a result of BCBSIL's discriminatory Policy and denial of coverage, Ms. Murphy and her partner had to pay up front and out-of-pocket for fertility treatments.

43. Had BCBSIL covered fertility treatments (including IUI and IVF) for Ms. Murphy from the start, she would have been able to choose the best course of treatment for her based on her personal circumstances, in consultation with her doctor. Instead, because of its discriminatory Policy, BCBSIL has forced Ms. Murphy and others to undertake immense financial, physical, and emotional costs.

44. In March, 2022 BCBSIL informed Ms. Murphy that there were no changes in the benefits under her policy from 2021 to 2022, and therefore, she is still subject to BCBSIL's discriminatory policies.

### III. Class Allegations

45. Plaintiff seeks prospective injunctive relief and damages on behalf of two classes of similarly situated individuals under Rule 23(b)(2) and (b)(3), respectively, of the Federal Rules of Civil Procedure ("Plaintiff Classes").

46. The Plaintiff Class under Rule 23(b)(3) comprises all individuals who, while covered by a BCBSIL health insurance plan in Illinois, have been denied coverage for fertility treatment by BCBSIL because the individual, due to their sexual orientation or gender identity, cannot meet BCBSIL's prerequisite of a diagnosis or treatment of "infertility" based upon the inability to conceive a child after one year of "unprotected sexual intercourse."

47. The Plaintiff Class under Rule 23(b)(2) comprises all individuals who are or will be covered by a BCBSIL health insurance plan in Illinois and who will be denied coverage for infertility treatment in the future because the individual, due to their sexual orientation or gender identity, will not be able to meet BCBSIL's prerequisite of a diagnosis or treatment of "infertility" based upon the inability to conceive a child after one year of "unprotected sexual intercourse."

48. The Plaintiff Classes are so numerous that joinder of all individual members would be impracticable. Upon information and belief, the "infertility" prerequisite contained in Plaintiff's Policy is contained in thousands of BCBSIL members' policies, and many individuals are likely to have been forced to pay out-of-pocket for fertility treatments based upon their sexual orientation or gender identity.

49. The questions of law and fact presented by Plaintiffs are common to all members of the Plaintiff Class. Among others, questions common to the Plaintiff Classes include:

    a. Whether BCBSIL's Policy language regarding infertility treatment results in members who, due to their sexual orientation or gender identity, cannot meet BCBSIL's prerequisite of a diagnosis or treatment of "infertility" based upon the inability to conceive a child after one year of "unprotected sexual intercourse" and therefore have to pay out-of-pocket for fertility treatments; and

    b. Whether this policy constitutes discrimination on the basis of sex, including sexual orientation and/or gender identity.

50. Common issues of law and fact predominate any individual issues.

51. All members of the Plaintiff Classes are likely to be subjected to the same practices and policies of BCBSIL.

52. Plaintiff's claims for prospective relief are typical of the Plaintiff Class under Rule 23(b)(2). Individuals enrolled in BCBSIL health insurance plans in Illinois are likely to continue to seek fertility treatment coverage under BCBSIL's plans, these individuals are likely to include many individuals who, due to their sexual orientation or gender identity, will not be able to meet BCBSIL's prerequisite of showing of a diagnosis or treatment of "infertility" based upon the inability to conceive a child after one year of unprotected sexual intercourse," and both Plaintiff and members of the Plaintiff Class are reasonably fearful that BCBSIL will continue to subject its members to discrimination on the basis of sex by maintaining its policy language across health plans.

53. The entire Plaintiff Class under Rule 23(b)(2) will benefit from the injunctive relief sought herein.

54. Plaintiff has no conflict of interest with any member of the Plaintiff Classes, is committed to vigorous prosecution of all claims on behalf of members of the Plaintiff Classes, and will fairly and adequately protect the interests of the Plaintiff Classes.

55. The Plaintiff Classes are represented by competent counsel experienced in complex civil litigation and class action cases.

56. A class action is superior to any other method for the fair and efficient resolution of this legal dispute, as joinder of all members of the Plaintiff Classes is impracticable. Further, the prosecution of hundreds or thousands of individual actions by individual members of the Plaintiff Classes would create the substantial risk of inconsistent or varying adjudications, which would establish potentially incompatible standards of conduct for Defendant BCBSIL.

## **CAUSE OF ACTION**
**42 U.S.C. § 18116(a)**
**Discrimination in Health Care on the Basis of Sex**

57. Plaintiff and the Plaintiff Classes reallege as if fully set forth herein the allegations contained in the preceding paragraphs.

58. Section 1557 of the ACA prohibits discrimination on the basis of sex, including discrimination on the basis of sexual orientation and gender identity, in any health program or activity that receives federal financial assistance.

59. Upon information and belief, BCBSIL receives federal financial assistance and is a health program or activity, and it is therefore covered by Section 1557 of the ACA.

60. BCBSIL discriminates on the basis of sex under Section 1557 by requiring LGBTQ individuals who cannot conceive through sexual intercourse because of their gender identity or their sexual orientation to incur substantial costs as a prerequisite to receiving coverage for fertility services.

61. As a direct result of Defendant's violation of Plaintiff's and the Plaintiff Classes' rights under Section 1557 of the ACA, Plaintiff and the Plaintiff Classes have suffered injury.

62. All the acts and omissions committed by Defendant described herein for which liability is claimed were done intentionally, unlawfully maliciously, wantonly, recklessly, negligently, and/or with bad faith and said acts meet all of the standards for imposition of punitive damages.

63. Accordingly, Plaintiff and Plaintiff Class under Rule 23(b)(3) are entitled to compensatory and punitive damages, as well as reasonable attorneys' fees, costs, and disbursements.

64. Plaintiff and Plaintiff Class under Rule 23(b)(2) are entitled to injunctive and declaratory relief, as well as reasonable attorney's fees, costs and disbursements.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order certifying this action as a Class action and appointing Plaintiff and her counsel to represent the Classes;

B. For equitable relief enjoining Defendant from engaging in wrongful conduct complained of herein pertaining to its discriminatory health insurance policy that, on its face, engages in sex discrimination by denying LGBTQ individuals equal access to fertility treatment;

C. For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

D. For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

E. For an award of attorneys' fees and costs, and any other expenses, including expert witness fees;

F. Pre- and post-judgment interest on any amounts awarded; and

G. Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: November 13, 2023

/s/ *Edward A. Wallace*_____
Edward A. Wallace
Mark R. Miller
Molly C. Wells
**Wallace Miller**
150 N. Wacker Dr.
Suite 1100
Chicago, IL 60606
T: 312.261.6193
F: 312.275.8174
E: eaw@wallacemiller.com
   mrm@wallacemiller.com
   mcw@wallacemiller.com

12