IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KELSEY MURPHY, on behalf of herself and all others similarly situated,  *Plaintiff*,  -against-  HEALTH CARE SERVICE CORPORATION d/b/a BLUE CROSS AND BLUE SHIELD OF ILLINOIS,  *Defendant*. | Case No.: 1:22-cv-02656  Judge LaShonda A. Hunt  Magistrate Judge Gabriel A. Fuentes |

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

Plaintiff Kelsey Murphy ("Plaintiff") respectfully requests that this Court enter an order compelling Defendant Health Care Service Corporation d/b/a Blue Cross and Blue Shield of Illinois ("Blue Cross" or "Defendant") to provide full and complete responses to Plaintiff's Requests for Production 1, 3, 4, 5, 7, 8 within ten days and verify Defendant's discovery responses. Plaintiff further requests that the Court order Defendant to verify its answers to Plaintiff's discovery requests.

In support of this motion, Plaintiff states:

1. Plaintiff, individually, and on behalf of all others similarly situated, brings a claim against Blue Cross under Section 1557 of the Affordable Care Act which prohibits discrimination on the basis of sexual orientation and gender identity. 42 U.S.C. §18116. Plaintiff's First Amended Complaint (ECF 53) alleges that Blue Cross has intentionally discriminated against Plaintiff, a woman in a same-sex partnership, and other LGBTQ+ individuals by failing to provide them equal access to fertility benefits.

1

2. Specifically, BCBSIL's definition of "infertility" requires a covered individual in a same-sex relationship to shoulder out-of-pocket costs prior to being eligible for coverage of fertility treatment. Individuals in a heterosexual relationship, on the other hand, are not required to pay similar out of pocket payments before BCBSIL will cover the same fertility treatments. As such, the policy is discriminatory on its face.

**I.     Procedural History**

3. On July 6, 2023, the District Court referred this case to Magistrate Judge Fuentes for discovery supervision and settlement. (ECF 32).

4. On July 13, 2023, this Court set a fact discovery deadline of December 20, 2023. (ECF 34).

5. Thereafter, on July 20, 2023, and pursuant to this Court's Order of July 13, 2023, the Parties filed a joint status report. (ECF 35). On review of the parties' joint status report, the Court extended the fact discovery deadline to March 29, 2024. (ECF 36).

6. On September 26, 2023, the Parties filed a joint motion seeking the entry of an Agreed Confidentiality Order (ECF 39). That same day, the Court granted the parties' motion and subsequently entered the Agreed Confidentiality Order. (ECF 40, 43, 44)

7. On October 17, 2023, Judge Hunt denied Defendant's motion to dismiss. *See* Memorandum and Opinion of October 17, 2023. (ECF 45).

8. Subsequently, on October 24, 2023, Judge Hunt granted Plaintiff's request for leave to file an amended complaint and ordered Plaintiff to do so by November 13, 2023. (ECF 48). Consistent with the District Court's order, Plaintiff filed her First Amended Complaint on November 13, 2023. (ECF 53). Defendant answered Plaintiff's First Amended Complaint on November 29, 2023. (ECF 54).

9. Over the past several months, Plaintiff has served on Defendant various sets of written discovery requests, worked to resolve disputes stemming from the same, and has also worked to prepare for a mediation that was set to occur on February 27, 2024. Plaintiff sent her first Rule 37 Letter on October 23, 2023, and a second letter on June 4, 2024. As detailed below the parties have conferred numerous times regarding the issues outlined herein.

10. On February 23, 2024, this Court, after holding a pre-settlement telephonic conference with the parties, determined that the parties were not yet prepared to engage in a settlement conference and vacated the mediation set for February 27, 2024. (ECF 61).

11. On March 8, 2024, Plaintiff and Defendant moved this Court to extend the fact discovery deadline from March 29, 2024, to October 31, 2024. (ECF 62). The Court granted the parties' request and extended the fact discovery deadline to October 31, 2024. (ECF 63).

12. On December 16, 2022, Plaintiff served her first set of interrogatories, document requests, and requests for admission on Defendant ("Plaintiff's First Discovery Requests"). *See* Exhibit A. On November 22, 2023, Plaintiff served Defendant with her second set of interrogatories, document requests, and requests for admission ("Plaintiff's Second Discovery Requests"). *See* Exhibit B. On April 18, 2024, Plaintiff served her third set of document requests. *See* Exhibit C. On June 26, 2024, Plaintiff served her third set of interrogatories and fourth set of document requests.[1] *See* Exhibit D. Defendant has responded to Plaintiff's discovery requests and amended their responses several times, aside from the latest set that is not yet due. The summaries provided below of Defendant's responses reflect the most recently amended versions.

---

[1] In response to Plaintiff's Fourth Set of Document Requests, which requested, among other things, documents that Defendant references on its own website, Defendant has produced nothing at all. Plaintiff will move after conferring pursuant to Local Rule 37-1.

3

## II. Applicable Rules

13. Fed. R. Civ. P. 26(b)(1) provides that a party may obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Fed. R. Civ. P. 33 permits a party to serve interrogatories as to any matter that may be inquired into under Rule 26(b).

14. Fed. R. Civ. P. 34 permits a party to serve on another a party a request for production of documents. Fed. R. Civ. P. 34(B)(2)(b) states that the production of responsive documents "be completed no later than the time for inspection specified in the request or another reasonable time specified in the response."

15. Fed. R. Civ. P. 37 permits a party to move for an order compelling the answer to discovery requests and the production of responsive documents in accordance with Fed. R. Civ. P. 33 and 34. Rule 37 provides that a party may seek to compel discovery when, as here, a responding party fails to answer an interrogatory or refuses to provide requested documents or information. Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv).

16. Before such a motion is made, the moving party must "in good faith" confer or attempt to confer with the party that has failed to make the disclosure in an effort to avoid court involvement. *See* Fed. R. Civ. P. 37(a)(1).

## III. Compliance with Fed. R. Civ. P. 37 & Local Rule 37.2

17. Pursuant to Fed. R. Civ. P. 37 and Local Rule 37.2, and in an attempt resolve the disputes outlined herein, Molly Wells, counsel for Plaintiff, sent letters to Bryan Webster, attorney for Defendant, on October 23, 2023. Matthew Goldstein, counsel for Plaintiff, sent a second Rule 37 letter to Zachary Kizitaff, counsel for Defendant, on June 4, 2024. Further, Matthew Goldstein, Plaintiff's counsel, conferred telephonically with Zachary Kizitaff, Defendant's counsel, concerning Defendant's failure to respond to Plaintiff's Discovery Requests telephonically on June

4

17, 2024. Plaintiff's counsel, Matthew Goldstein and Julia Ozello, conferred again telephonically with Defendant's counsel, Zachary Kizitaff, on July 24, 2024.

18. Despite good faith efforts, the parties have not been able to resolve the disputes discussed herein.

**IV. Defendant has Failed to Verify its Discovery Responses**

19. Despite repeatedly promising to do so, Blue Cross has failed to verify its discovery responses. The Federal Rules of Civil Procedure require the individual who answers interrogatories to sign them. Fed. R. Civ. P. 33(b)(5) ("The person who makes the answers must sign them, and the attorney who objects must sign any objections.") Where the responding party is a corporation, an officer or agent must sign the responses. Fed. R. Civ. P. 33(b)(1)(B). The interrogatory answers must also be verified, but Blue Cross has yet to provide any verifications despite Plaintiff's continued requests. *Villareal v. El Chile, Inc.*, 266 F.R.D. 207, 211 (N.D. Ill. 2010). Plaintiff requests that this Court order Defendant to verify its discovery responses in a manner consistent with the Federal Rules.

**V. Disputed Requests**

20. Request for Production No. 1:

> All documents relating to Kelsey Murphy's requests for coverage of health care services related to her "Infertility Treatment" benefits, including but not limited to BCBSIL's claims processing of the same, its denials of coverage for certain health care services, including all documents reviewed or consulted by defendant in the process of administering Ms. Murphy's claims, and Ms. Murphy's administrative appeals.

Exhibit A, p. 1-2.

21. While Defendant asserted various inappropriate boilerplate objections, it agreed to produce documents in its custody, possession, and control that it can identify after a reasonable search relating to Plaintiff's requests for infertility benefits from 2020 to the present. Plaintiff has

received some documents, but Blue Cross has not stated whether its production is complete or not. Plaintiff requests that the Court order them to do so.

22. Request For Production No. 3:

> All contracts, applications, or other agreements between WINFertility and BCBSIL in effect as of January 1, 2012, up to and including the present.

Exhibit A, p. 3-4.

23. Blue Cross has produced a single contract, and as of July 24, 2024, several Statements of Work incorporated into that contract. Blue Cross contends that it is still searching for other documents. Here, Plaintiff is specifically seeking the "Statements of Work" referenced in the 2020 Master Services Agreement between Defendant and WINFertility[2], any other master service agreements entered into between Defendant and WINFertility that were effective one year prior to the beginning of the putative class period (January 1, 2017) through December 31, 2019, and from January 1, 2023, to the present, as the provided Master Services Agreement is valid from January 1, 2020, through December 31, 2022. Plaintiff also seeks any other corresponding Statements of Work, which are documents incorporated into the Master Services Agreement that purport to describe the services WINFertility provides to Blue Cross. The contracts are relevant to, among other things, Plaintiff's claims, as well as Defendant's Affirmative Defenses, including, but not limited to, Defendant's Fifth and Sixth Affirmative Defenses. These affirmative defenses assert, among other things, that Blue Cross has a reasonable, good faith, and non-discriminatory basis for denying Plaintiff's claim for coverage, and that Blue Cross's conduct did not cause any damage to Plaintiff or the putative class.

---

[2] Defendant designated the Master Services Agreement (HCSC 00767-00798) "Confidential" pursuant to the Confidentiality Order (ECF 44) entered by this Court.

24. Blue Cross previously identified WINFertility as the provider that Blue Cross contracts with to provide infertility services to Illinois residents from 2018-2022. (Exhibit B, p. 8).

25. In its latest amended responses (served on July 15, 2024), Defendant stated that it is still investigating the existence of additional documents. Plaintiff has diligently followed up with Defendant concerning this issue over at least the last year, but Defendant has only very recently begun producing Statements of Work. Note that in recent Rule 37 discussions, over a year after this request was issued, Blue Cross has begun hedging on its previous statement that WINFertility was the sole provider of infertility services for Blue Cross. There may have been a different provider for infertility services between 2017 through the end of 2019, despite Blue Cross previously stating in writing that WINFeritity was the sole provider of such services.

26. Additionally, on July 24, 2024, Blue Cross provided an agreement concerning WINFertility providing infertility services to an entity on behalf of Defendant. This was not the full contract for infertility services between Defendant WINFertility, but rather an agreement limited to services WINFertility would provide to one company on behalf of Blue Cross. Said agreement was effective on April 4, 2017, and indicated that WINFertility was at least one of the infertility service providers for Defendant during the class period (January 1, 2017 to present)[3], but Plaintiff has not received the full agreement between WINFertility and Blue Cross that was effective during that time period. Plaintiff does not know if there were other providers of infertility services between 2017 and December 31, 2019, aside from WINFertility, as Blue Cross has not confirmed one way or the other.

27. Plaintiff accordingly requested information and followed up with Defendant about any other providers and their corresponding contracts with Blue Cross, but Plaintiff has yet to

---

[3] The documents in question, HCSC 044293-44309, were marked as confidential by Defendant.

receive the requested information and documents despite the fact that there this request has been pending for over a year. Blue Cross has not produced the complete set, nor has Plaintiff received agreements providing for infertility services between 2017 and December 31, 2019.

28. As Plaintiff's claim concerns whether infertility services were provided to Illinois residents in a manner that discriminates against a Blue Cross member on the basis of sex or sexual orientation (*See* ECF 53 generally), the services provided by WINFertility, and any contracts and incorporated documents between WINFertility and Blue Cross are relevant to Plaintiff's claim, and Plaintiff is therefore entitled to this discovery. These documents are in Defendant's custody, control, or possession, easily producible, and Defendant has been incredibly obtuse in producing these documents given that this request has been pending for over a year now, despite Defendant's agreement to produce these documents.

29. Request for Production No. 4:

> All documents, emails, and other communications including fax back forms between WINFertility and BCBSIL relating to covering and/or excluding treatment related to "infertility" from the Plans as defined in Dkt. No. 1-1, p. 29; Dkt. No. 16-1, p.50; See Dkt. No. 16-1, pp. 186-87.

Exhibit A, p. 4.

30. Blue Cross objected to the definition of "fax back forms" and the relevant time period but stated that it would produce responsive documents when a confidentiality order was entered. First, as stated above, and as Defendant well knows, this Court has entered a confidentiality order. Defendant has not, however, produced responsive documents which are necessary to determine, among other things, who is a member of the putative class. Second, with respect to the meaning of "fax back forms," Blue Cross has provided some documents, but disputed the definition of "fax back forms;" Plaintiff clarified the definition during Rule 37 discussions. It is a form widely used by Defendant and the healthcare industry, and typically includes information

about patients and their care. These forms are used for a variety of reasons, including a provider obtaining authorization for procedures, the insurer certifying a patient's request for coverage prior to treatment, providing quotes for treatments, or deciding whether a patient is eligible for certain care under their policy. Insurers such as Blue Cross usually then faxes back its decisions concerning whether it will cover the requested treatment. An example from BlueCross Blue Shield of Texas is attached as Exhibit E and illustrates that a variety of insurance and coverage information can be provided on these forms, including the type of care the member is seeking. Note that other Blue Cross Blue Shield entities participate in an automatic fax-back program, meaning that Defendant may already have a system in place to automatically send decision letters to providers that enroll in a similar program[4]. Thus far, however, Plaintiff has not received any fax back forms.

31. In this case, the fax-back forms are relevant as they may identify putative class members. The forms will denote if the member is seeking infertility treatment or coverage and whether the requested treatment was covered by Defendant's policy. Plaintiff requires this information as it is pertinent to the issue of numerosity, and therefore necessary for class certification purposes under Rule 23.

32. With respect to the relevant time period, BCBSIL's contention that documents which pre-date 2020 are not relevant nor proportional to the needs of the case is baseless, as the relevant statute limitations runs from May 19, 2018, four years before the alleged violation. The class period includes persons who were denied benefits dating from May 19, 2018. Plaintiff has

---

[4] Automatic Fax Back Program, Blue Cross Blue Shield of Massachusetts, https://provider.bluecrossma.com/ProviderHome/wcm/connect/f58e0318-170c-4e34-a2f7-2de7786d3d1e/MPC_021221-1F-1-PF_final.pdf?MOD=AJPERES&CONVERT_TO=URL&CACHEID=ROOTWORKSPACE-f58e0318-170c-4e34-a2f7-2de7786d3d1e-oaIBnJb (last accessed July 31, 2024).

agreed to limit this request to January 1, 2017, to the present. Plaintiff accordingly requests that this Court compel Defendant to fully respond to this request.

33.     Request for Production No. 5:

>  All documents provided to, or created by or for, employees or agents of BCBSIL that describe, explain, or otherwise relate to its administration of benefits for and/or exclusions of health care services to treat "infertility" at any time since January 1, 2012. This request includes but is not limited to: training manuals, policy manuals, information sheets, internal memoranda, meeting minutes, policy positions, committee reviews, notes, correspondence, implementation plans, fax back forms, etc. including without limitation any research, reports, analyses, studies, etc. upon which BCBSIL's medical policies, and/or coverage exclusions are or were based.

Exhibit A, p. 5-6.

34.     Blue Cross has produced responsive documents, but also stated that they are still investigating whether any additional documents exist. These documents are relevant and will likely be necessary to depose Defendant's employees. And as the fact discovery deadline is set for October 31, 2024, Plaintiff will be required to take multiple depositions in a short amount of time. Having responsive documents prior to these depositions will be key. Plaintiff accordingly requests that this Court compel Defendant to fully respond to this request.

35.     Request for Production No. 7:

> An organizational chart for BCBSIL (and its subsidiaries/component entities, if applicable) for the years 2012 to the present.

Exhibit A, p. 7.

36.     While Blue Cross stated that it would produce "relevant portions of its organizational charts from 2018 to 2022 containing the names of the individual(s) and department(s) who may have been involved in the drafting, revising, and/or implementation of health plans and policy materials related to infertility benefits[,]" (Exhibit A, pp. 7-8) it refuses to provide the full chart on the basis that the document is 2,000 pages long, and it contains

identification information of many employees and job responsibilities that are unrelated to Blue Cross, infertility benefits, or any issues involved in the litigation. *See Id*. Plaintiff has also not received any type of organizational charts from 2018 to 2022, despite Blue Cross's statement that they will produce those charts.

37. The organizational chart being 2,000 pages long is not a basis to withhold the document. Defendant's organizational chart is relevant as it will elucidate its decision-making structure such that Plaintiff can determine who was involved in, among other things, drafting Defendant's infertility policy language and administering infertility benefits at BCBSIL. Plaintiff has previously agreed to limit the scope of this request from January 1, 2017 to the present.

38. Organizational charts can provide a quick means for identifying persons by subject and refining deposition lists based on responsibilities that coincide with areas requiring investigation. Therefore, obtaining these charts early in discovery is recommended to identify relevant witnesses and gather necessary information.

39. Plaintiff requires organizational charts to locate key witnesses, departments, and operations concerning the creating and implementation of (in)fertility policies and coverage. "[I]nformation about organizational arrangements" is discoverable "if likely to yield or lead to the discovery of admissible information." Fed. R. Civ. P. 26(b)(1) advisory committee notes to 1946 amendment; *see also Maag Audio, LLC v. Earbyte, Inc*., No. CV 20- 10444, 2020 WL 12707953, at *2 (E.D. Mich. Nov. 19, 2020) (finding the identification of foreign "owners and organizational arrangements would lead to the discovery of admissible evidence and is discoverable under Rule 26(b)(1)."

40. Because the sought organizational charts will provide insight into Defendant's structure concerning the chain of command and the relationships between personnel who were

11

involved in drafting and implementing infertility benefits, treatment, and coverage, they are relevant, proportional, and therefore discoverable. *See Prater v. All. Coal, LLC*, Case No. 3:21-cv-00066-RLY-MJD, 2024 U.S. Dist. LEXIS 28049 at *8 (S.D. Ind. Mar. 5, 2024) (finding that the defendant's organizational charts are relevant to ascertaining the chain of command, the relationship between defendant and its affiliate companies, and how management positions have changed over time).

41. Plaintiff requires these charts to find the appropriate individuals for depositions as well as determining who is responsible for creating, drafting, and implementing the allegedly discriminatory policies. Plaintiff did not request a narrowed organizational chart, and Blue Cross cannot unilaterally decide which jobs and individuals are involved in infertility coverage. Doing so obfuscates the discovery process, and Plaintiff is entitled to the full organizational chart to ascertain how Defendant is organized, and which individuals have responsive information.

42. Request for Production No. 8:

> All documents provided to, or created by or for, employees or agents of BCBSIL that describe, explain, or otherwise relate to coverage and/or the exclusion of treatment for infertility in its insured and/or self-funded or claims administered plans. This request includes but is not limited to: training manuals, policy manuals, information sheets, internal memoranda, meeting minutes, policy positions, committee reviews, notes, correspondence, implementation plans, fax back forms etc. including without limitation any research, reports, analyses, studies, etc. upon which BCBSIL's coverage determinations of treatment for infertility are based.

Exhibit A, p. 8-9.

43. Defendant responded that this request is not proportional, seeks privileged information, and that Blue Cross is withholding documents based on these objections. Plaintiff has not yet received a privilege log, and as requested *supra*, Plaintiff requests that the Court compel Defendant to produce a privilege log.

44. Furthermore, any document that describes, explains, or relates to infertility benefits,

12

including coverage for the same, is relevant as this information will illustrate if Blue Cross is instructing its employees or agents to provide coverage or benefits in a discriminatory manner, thereby making the sought information relevant to Plaintiff's claim. Plaintiff therefore requests that this Court compel Defendant to fully respond to this request.

    WHEREFORE, Plaintiff respectfully requests that the Court order Defendant to provide full and complete responses to Plaintiff's Requests for Production 1, 3, 4, 5, 7, 8 within ten days, and verify its answers to Plaintiff's discovery requests.

Dated: August 19, 2024                                            Respectfully submitted,

                                                                                                    */s/ Julia Ozello*
                                                                     Julia Ozello
                                                                     Edward A. Wallace
                                                                     Mark R. Miller
                                                                     Molly C. Wells
                                                                     Matthew J. Goldstein
                                                                     WALLACE MLLER
                                                                     150 North Wacker Drive
                                                                     Suite 1100
                                                                     Chicago, IL 60606
                                                                     T: 312.261.6193
                                                                     F: 312.275.8174
                                                                    E: jo@wallacemiller.com
                                                                         eaw@wallacemiller.com
                                                                         mrm@wallacemiller.com
                                                                         mcw@wallacemiller.com
                                                                         mjg@wallacemiller.com